IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

REGINA A. WILLIAMS,

                Plaintiff,

v.                               CIVIL ACTION NO.  5:09-cv-00049

BASIC CONTRACTING SERVICES, INC.,

                Defendant.

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Basic Contracting Services Inc.'s Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment [Docket 17].

*I.  BACKGROUND*

This action concerns the allegedly unlawful termination of Plaintiff Regina Williams by her former employer, Defendant Basic Contracting Services, Inc. (BCS).[1]  BCS is a New Mexico corporation doing business in West Virginia.  BCS had been awarded a contract by the United States Department of Labor's Mine Safety and Health Administration (MSHA) to provide cleaning and janitorial services for the MSHA's Mine Academy in Beaver, West Virginia.  Williams was employed by BCS as a maid at the Mine Academy from 2001 until her termination on October 3,

---

[1]  As the pending motion for judgment on the pleadings is judged by the same standards as a motion to dismiss, *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002), the allegations in the complaint are assumed to be true for present purposes, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court also will consider the existence and contents of documents of which it may take judicial notice.

2007.  At some point, Williams became suspicious that BCS was engaging in fraudulent practices by, among other things, double-billing the MSHA for certain cleaning services.  Williams voiced her concerns to a MSHA employee at the Mine Academy.  The conversation was overheard by a fellow BCS employee, who relayed the details to Williams' supervisor.  Roughly two weeks later, Williams was placed on suspension for insubordination and for not properly cleaning a room.  Fearing retaliation for being a whistleblower, Williams discussed her situation with an Equal Employment Opportunity Commission (EEOC) counselor.  She was fired days later.

Williams filed a formal complaint with the EEOC on April 8, 2008, alleging that BCS retaliated against her and discriminated against her on the basis of her age and race.  The EEOC dismissed the complaint on the grounds that the EEOC was unable to conclude whether BCS had violated any statutes and issued a right to sue notice on June 13, 2008.  The right to sue notice indicated that Williams had ninety days to file a case.

On August 8, 2008, Williams filed a voluntary petition for bankruptcy with the United States Bankruptcy Court for the Southern District of West Virginia.  Williams did not list the EEOC complaint in the Statement of Financial Affairs she filed with the bankruptcy court.  The bankruptcy court discharged Williams' debts on November 10, 2008.

Williams filed this action on September 28, 2008, in the Circuit Court of Raleigh County, West Virginia.  The complaint contains three causes of action: (1) intentional infliction of emotional distress; (2) unlawful reprisal on the basis of whistleblowing in violation of 41 U.S.C. § 265; and (3) termination of employment in violation of substantial public policy.  BCS timely removed the case to this Court on January 15, 2009, invoking the Court's diversity jurisdiction, 28 U.S.C. § 1332, and federal question jurisdiction, 28 U.S.C. § 1331.

BCS filed the pending motion for judgment on the pleadings on June 18, 2009.  BCS argues that Williams should be judicially estopped from maintaining this case because of her failure to disclose the EEOC complaint and the instant case to the bankruptcy court.  Williams resists the motion by arguing that her failure to disclose this case to the bankruptcy court was inadvertent, and, thus, application of the equitable remedy of judicial estoppel is not warranted.  Additionally, in an apparent attempt to cure the previous failure of disclosure, Williams reopened her bankruptcy case subsequent to the filing of the pending motion.

This matter is fully briefed and ripe for the Court's consideration.[2]

## II.  RULE 12(c) STANDARD

When considering a motion for judgment on the pleadings under Rule 12(c), the Court applies the same standard as when considering a motion to dismiss pursuant to Rule 12(b)(6).  *See Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).  Under the familiar standard of Rule 12(b)(6), the Court assumes the factual allegations in the pleadings to be true and construes them in the light most favorable to the non-moving party.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 248 (4th Cir. 1999).  If evidence outside the pleadings is tendered to and accepted by the Court, the motion for judgment on the pleadings is converted into a motion for summary judgment under Rule 56.  *A. S. Abell Co. v. Baltimore Typographical Union*, 338 F.2d 190, 193 (4th Cir. 1964); Fed. R. Civ. P. 12(d).  There is one

---

[2]  The Court will construe the motion solely as motion for judgment on the pleadings.  Discovery has not closed in this matter, and it would be premature to summarily adjudicate this matter on the record as it stands.  *See Miller v. Dell Fin. Servs., L.L.C.*, 5:08-cv-01184, 2009 U.S. Dist. LEXIS 40470, at *5, 2009 WL 1362485, at *2 (S.D. W. Va. May 13, 2009) (Johnston, J.).

exception:  The motion is not converted into a summary judgment motion if the Court considers documents and facts of which it may take judicial notice.  *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006); *Armbruster Prods. v. Wilson*, No. 93-2427, 1994 U.S. App. LEXIS 24796, at *5, 1994 WL 489983 (4th Cir. Sept. 12, 1994) (unpublished disposition).  The Court may take judicial notice of certain facts which are not subject to reasonable dispute, Fed. R. Evid. 201, and of the existence and contents of various types of official documents and records, *see, e.g, Lovelace v. Software Spectrum*, 78 F.3d 1015, 1018 (5th Cir. 1996) (documents filed with government agencies); *Anderson v. FDIC*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (records of bankruptcy court); *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 538 n.3 (W.D.N.C. 2008) (EEOC complaints and right-to-sue notices).[3]

### III.  DISCUSSION

BCS aks the Court to enter judgment in its favor on the grounds that Williams should be judicially estopped from proceeding with her complaint.  Judicial estoppel is a venerable equitable principle designed to protect the integrity of the judicial system by preventing litigants from opportunistically changing their position in subsequent proceedings.  *See King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998).  According to the doctrine, "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New*

---

[3]  The Court will take judicial notice of the existence and contents of the EEOC Charge of Discrimination (Docket 17-1), EEOC Notice of Dismissal and Notice of Rights (Docket 17-2), bankruptcy court docket sheet (Docket 17-3), bankruptcy petition and attached schedules (Docket 17-4), and bankruptcy court order reopening Williams' case (Docket 19-2).

*Hampshire v. Maine*, 532 U.S. 742, 749‒50 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

Because the doctrine of judicial estoppel is a creature of equity, there is no "precise formula or test" for when it is applicable. *Zedner v. United States*, 547 U.S. 489, 504 (2006). However, the sine qua non of judicial estoppel is bad faith. *See Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). Thus, judicial estoppel is not appropriate where the litigant's inconsistent position is the result of inadvertence or mistake. *King*, 159 F.3d at 196‒97. Direct proof of a party's bad faith is rare, but bad faith can be inferred from the circumstances. *Cf. Erie Ins. Prop. & Cas. Co. v. Mazzone*, 625 S.E.2d 355, 360 (W. Va. 2005) ("Bad faith is a state of mind which must be established by circumstantial evidence."). With respect to litigants who fail to disclose an unliquidated claim in the course of their bankruptcy proceedings, courts have found subsequent proceedings on that claim to be in bad faith when the litigant had both knowledge of the claim and a motive to conceal it. *See, e.g., Casto v. Am. Union Boiler Co.*, 2:05-cv-00757, 2006 U.S. Dist. LEXIS 14781, at *9, 2006 WL 660458, at *3 (S.D. W. Va. Mar. 14, 2006) (Goodwin, J.) (citing *In re USInternetworking, Inc.*, 310 B.R. 274, 285 (D. Md. 2004)).

Provided that bad faith is evident, there are a number of other factors that are generally considered by courts when determining whether to apply judicial estoppel, including (1) whether the party's position is clearly inconsistent with its prior position; (2) whether a court has accepted the party's prior position; (3) whether the position was one of fact or law; and (4) whether the party taking the inconsistent position would gain an unfair advantage or impose an unfair detriment from such conduct. *See Zedner*, 547 U.S. at 504 (citing *New Hampshire*, 532 U.S. at 750‒51); *1000 Friends of Md. v. Browner*, 265 F.3d 216, 226‒27 (4th Cir. 2001) ; *Havird Oil Co. v. Marathon Oil*

5

*Co.*, 149 F.3d 283, 292 (4th Cir. 1998). These factors are not intended to applied mechanically, and the Court has discretion to base its decision on the weight of the equities in light of the specific facts and circumstances of the case at hand. *See New Hampshire*, 532 U.S. at 750‑51 ("In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel.").

In the instant case, there are several indicia of bad faith. Williams was aware of her unliquidated claim against BCS prior to the filling of her voluntary bankruptcy petition. The EEOC issued its right-to-sue letter to Williams on June 13, 2008. The bankruptcy petition was filed on August 8, 2008, which is within the ninety-day period during which Williams could have filed a case based on her grievances against BCS. Williams thereafter filed this case in the state court while the bankruptcy proceedings were ongoing, but she did not disclose the filing to the bankruptcy court. Williams also had an apparent motive to conceal the case against BCS, because in doing so her creditors were denied the opportunity to share in the proceeds of any possible judgment.

Williams replies to the charge of bad faith by arguing that the failure to disclose this case was the result of inadvertence or mistake. Specifically, Williams maintains that she was unaware of her duty to disclose the potential claim and eventual suit against BCS. In support of this argument, she draws the Court's attention to the fact that she was represented by different attorneys in the bankruptcy case and in this case—although the inference to be drawn from this assertion is far from clear.[4] She also highlights the fact that the claims presented in her EEOC complaint were for

---

[4] The Court has not considered the affidavit or answers to interrogatories submitted by Williams because doing so would convert BCS's motion into a motion for summary judgment. Likewise, the Court has not considered arguments made in the parties' memoranda which are based on facts not found in the pleadings or judicially noticed documents.

discrimination, whereas the present case is founded on a whistleblower claim.  This assertion is largely immaterial to the question of bad faith because Williams nevertheless had a duty to disclose the potential cause of action to the bankruptcy court and a duty to disclose the existence of this case upon its filing.  *See Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207–08 (5th Cir. 1999) (citing 11 U.S.C. § 521(1)).  Lastly, Williams notes that she referred to the pending bankruptcy proceedings in her complaint.  She cites this as evidence that she was not attempting to conceal the existence of the various cases with which she was involved.  This assertion, too, is not particularly probative of Williams' good faith, as there was no potential harm to her in admitting to the state court that bankruptcy proceedings were ongoing.  Her duty to disclose ran only to the bankruptcy court and, in turn, to her creditors.  In sum, there is sufficient circumstantial evidence to conclude that Williams' failure to disclose the EEOC complaint or the present case to the bankruptcy court was in bad faith.  The weight of the circumstantial evidence is not overwhelming, however, and Williams' assertion that the failure to disclose was inadvertent is plausible nonetheless.

Assuming that Williams acted in bad faith, the Court must now consider all relevant factors and balance the equities to determine if the remedy of judicial estoppel is appropriate in this case. *See New Hampshire*, 532 U.S. at 751.  Several factors weigh in favor of judicial estoppel.  Williams' positions in the bankruptcy court and in this Court are inconsistent, and the positions pertain to an assertion of fact, namely, whether Williams had any potential claims against BCS.  *See Calafiore v. Werner Enters.*, 418 F. Supp. 2d 795, 797 (D. Md. 2006).  Williams also persuaded the bankruptcy court to accept her assertion that she had no potential claims against any parties, which potentially gave her an unfair advantage in her bankruptcy proceedings.

Conversely, other considerations weigh against judicial estoppel in this case. Although Williams' nondisclosure possibly afforded her an advantage with respect to her creditors in bankruptcy, it did not adversely affect BCS's position in the instant case. *See Zedner*, 547 U.S. at 504 (identifying as a relevant factor "whether the party seeking to assert an inconsistent position would . . . impose an unfair detriment on the opposing party if not estopped").[5] BCS was not a creditor in the bankruptcy proceedings, and thus was not prejudiced in that forum.

It also is significant that Williams has reopened her bankruptcy case. Doing so does not excuse her prior attempt to abuse the system—if that were her intent—but it does ameliorate the consequences somewhat. The integrity of the judicial system suffers from the type of opportunism allegedly engaged in by Williams, but the consequences of such actions fall most squarely on the defrauded creditors. By reopening the bankruptcy case, Williams' creditors may share in any judgment she receives. If BCS did in fact terminate Williams' employment in violation of 41 U.S.C. § 265, then it would be inequitable that it should receive a windfall at the expense of Williams' creditors—who, if BCS violated the law and Williams acted in bad faith, would be the only blameless parties with an interest in the outcome of this matter. *See Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 387‒88 (5th Cir. 2008) ("Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application.") (citing *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006)); *but see Casto*, 2006 U.S. Dist. LEXIS 14781, at *9 n.1, 2006 WL 660458, at *3 n.1.

---

[5] Because the purpose of judicial estoppel is to protect the integrity of the judicial process, and not necessarily to protect individual parties, judicial estoppel may be appropriate in the absence of prejudice to the party requesting estoppel. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988).

Accordingly, after considering all relevant factors, the Courts **FINDS** that the balance of the equities weighs against application of judicial estoppel in this case.

### IV.  CONCLUSION

For the reasons set forth above, Defendant Basic Contracting Services Inc.'s Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment [Docket 17] is **DENIED**.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        November 9, 2009

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

9